UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DACEY J. PRITCHETT (formerly
known as DACEY J. LaVIGNE),

          Plaintiff,                    Civil Action No. 04- 74650

v.                                HON. AVERN COHN
                                  U.S. District Judge
                                  HON. R.  STEVEN WHALEN
                                  U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Dacey J. Pritchett brings this action pursuant to 28 U.S.C.§1361, asking this Court to exercise its mandamus jurisdiction to compel Defendant to comply with an June, 2004 Appeals Council decision reinstating his benefits, including retroactive payments to January, 1999.  On February 1, 2005 Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  Both matters have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below,  I recommend that Plaintiff's request for a writ of mandamus compelling payment of past benefits be granted, and that Defendant's

motion to dismiss be denied.

# I.  BACKGROUND FACTS

## A.    Administrative Proceedings

The historical facts are not in serious dispute.  Plaintiff suffered injuries in a 1997 swimming accident which rendered him a quadriplegic.  Plaintiff, then a minor, applied for supplemental social security income (SSI). The Social Security Administration (SSA) found him disabled and in February of 1998 began issuing monthly benefits through Plaintiff's guardian.[1]  However, in 2000, SSA terminated Plaintiff's benefits, claiming that a "special needs trusts" set up pursuant to a probate court order disqualified Plaintiff from receiving benefits.[2] The SSA sent Plaintiff a written notice of intent to suspend benefits on August 3, 2000.  On August 25, 2000, the SSA sent Plaintiff a notice claiming he had been overpaid $9,016.27.

Plaintiff timely filed an appeal of the suspension of benefits on August 14, 2000, pursuant to 20 C.F.R. §416.1336(b).[3]  Plaintiff made timely and repeated

---

[1]Plaintiff's natural father abandoned him and his mother suffers from alcohol and drug problems.  He has been raised by his grandfather, Philip Pritchett, who has been caring for his personal needs since his accident.

[2]This trust is funded by the proceeds of the settlement of a lawsuit filed on Plaintiff's behalf, and settled in January, 1999.  The settlement consisted of a single payment of $25,002, followed by $1,000 per month for the next 20 years.

[3]The Appeal Council's decision, finding error in the failure to continue Plaintiff's benefits pending the administrative appeal, notes that "an appeal of the written notice of intent to suspend the claimant's benefits, dated August 3, 2000 (Exhibit AC-7), was filed on August 14, 2000 (Exhibit 9/2), within 10 days of date of the claimant's receipt of the August 3, 2000 notice of intent to suspend his

attempts to schedule an administrative hearing to reinstate benefits, but did not receive a hearing date until U.S. Representative Candice S. Miller interceded on his behalf in January, 2003. Even though Plaintiff had timely appealed the termination of his benefits, all payments to him ceased during the pendency of the appeal, and no payment of any kind was made until after the commencement of this lawsuit.

On April 23, 2003 Administrative Law Judge (ALJ) Lubomyr M. Jachnycky found that the trust was irrevocable, and hence the overpayment determination (based on the erroneous assumption that the trust was revocable) was made in error. The ALJ ordered that benefits be immediately reinstated from August, 2000.[4] The ALJ found that the trust principal was not a countable resource under SSI regulations, and also found, based on testimony from the trustee, that disbursements from the trust to date were not countable as income:

> "Additionally, although trust principal is not a countable resource, disbursements from the trust, under certain circumstances could be countable income for determining the beneficiary's eligibility and level of benefits. Any disbursement or payment to the beneficiary or any third party for food, clothing, or shelter would constitute income for SSI purposes. Trust disbursements resulting in receipt of goods or services other than food, clothing, or shelter (such as medical care) would not constitute countable assets....*There is no evidence in the file that the claimant has received any such disbursements from the trust to date. The testimony of the trustee at the hearing indicated that the trust funds have only been used to purchase special items, such as special*

benefits."

[4]"The determination of an overpayment is reversed and the claimant's benefits should be reinstated immediately." *ALJ's Decision*, p.7.

*equipment vehicle, for the beneficiary."   ALJ's Decision*, p. 6 (emphasis added).

The Appeals Council undertook review of the ALJ's decision, based on a memorandum from the Office of the Chicago Regional Commissioner of the SSA. The Appeals Council, affirming the ALJ's finding in June, 2004, first noted that "the amount of income paid into the Trust in January 1999 and following months, *if countable as available to the claimant for his support and maintenance*, exceeded the allowable income limit for supplemental security income eligibility in that month...." *Appeals Council Decision*, p. 3 (emphasis added).  The Appeals Council then found that the corpus of the trust and additions thereto were not available to the Plaintiff, and thus not countable as either resources *or* income:

> "Thus, the Appeals Council finds the Dacey Jon LaVigne Trust is irrevocable, that the trust is not countable as a resource of the claimant and that additions to the trust are not countable as income available to the claimant.  *It follows that the monthly amounts paid into the trust and corpus of the trust are not countable as income and resources of the claimant*."  *Appeals Council Decision*, p. 7 (emphasis added).

The Appeals Council also found that pursuant to 20 C.F.R. §416.1336(b), payment of SSI benefits should have been continued from August of 2000, while the appeal process was ongoing.  ("Quite clearly the claimant should have received payments until a decision of his appeal was made.  It is error for the Social Security Administration to do otherwise" *Appeals Council Decision*, p.7).  The Appeals Council further stated that such payments should be granted to Plaintiff on an expedited basis.  In compliance with the directions of the Appeals Council, Plaintiff

presented the Appeals Council decision to the field office the same month.

In August, 2004, Dennis Crimmins, Field Office Manager for SSA's Port Huron office notified Plaintiff that because a portion of the information he had requested in June, 2004 had not been provided, he had placed Plaintiff's claim in "denied status for failure to cooperate." [5] Plaintiff complied with Crimmins' demand for documentation, but has maintained that the document requests were completely irrelevant to the Appeals Council order to resume benefit. Nonetheless, the SSA continued to withhold Plaintiff benefits.

Plaintiff filed suit in this Court on November 30, 2004. On January 19, 2005, he received notice from the SSA that he owed the agency $9,016.27. The SSA resumed payments, according to Plaintiff, in February, 2005, but the check amount reflected a deduction for "overpayment." During the same time period, Plaintiff received a check for "underpayments" in amount of $6,948.00. The check was unaccompanied by amounts owed, balance due, or basis for calculation.[6]

### B.    Testimony at the June 21, 2005 Hearing

Dennis Crimmins, Field Office Manager of the Port Huron Social Security Office, testified at the hearing held in this Court on June 21, 2005. He stated that he

---

[5]At the hearing in this Court on June 21, 2005, Mr. Crimmins denied writing this letter, although he acknowledged that it bore his signature stamp.

[6]At the June 21, 2005 hearing, the parties agreed that Plaintiff is currently owed $3,831.32 in back payments.

had worked in his current position for seven years, and had been aware of Plaintiff's case since benefits were first awarded in 1997.  He testified that the notice of termination of benefits issued after he became aware of the Plaintiff's trust in 2000.  Mr. Crimmins conceded that Plaintiff filed a timely appeal, and that under Social Security regulations (specifically 20 C.F.R. §416.1336(b)), payment of monthly benefits to Plaintiff should have continued.  He had no explanation as to why that regulation was disregarded, other than to say that a mistake was made.

Mr. Crimmins could not explain the two and one-half year delay between the Plaintiff's request for a hearing and the actual scheduling of a hearing before an ALJ.  He said that the scheduling of such hearings is a matter for the Office of Hearings and Appeals, and that in his view, a two or two and one-half year wait is not uncommon.[7]  Mr. Crimmins acknowledged that he had frequent contact with Plaintiff's attorney during this time, but that he himself did nothing to attempt to expedite a hearing.

Mr. Crimmins testified that the decision to appeal the ALJ's ruling in favor of Plaintiff originated with the Office of the Chicago Regional Commissioner.  He could not explain why benefits continued to be withheld pending that appeal.  He conceded that the Port Huron office received a copy of the Appeals Council's decision, but did not know whether that was provided by the Appeals Council or Plaintiff's attorney.

---

[7]This Court hears a substantial number of Social Security appeals under 42 U.S.C. §405(g).  I have never seen a delay as long as two and one-half years between an initial determination or rehearing and an administrative hearing before an ALJ.

Mr. Crimmins stated that he did not personally read the Appeals Council decision until shortly before the June 21, 2005 hearing.

Mr. Crimmins denied writing the letter of August 27, 2004, which placed the case "in a denied status for failure to cooperate." He said that although it bore his signature stamp, it was probably written by a claims examiner who worked under his supervision. He said that Plaintiff's (or more accurately, Plaintiff's counsel's) "failure to cooperate" related to not being provided with all of the trust disbursement documentation going back to January of 1999. In response to questioning about the relevance of information which had been presented to and passed on by the ALJ, Mr. Crimmins testified that he did not believe he was bound by the ALJ's findings of fact, affirmed by the Appeals Council, that the trust was not used for or to be counted as income to the Plaintiff.

Mr. Crimmins acknowledged that payments to the Plaintiff were not resumed until after this lawsuit was filed. He could not explain why the SSA sent Plaintiff a notice in January, 2005 that he owed the agency $9,016.27 for an overpayment, or why the February, 2005 check to the Plaintiff reflected a deduction for overpayment, notwithstanding the ALJ's and the Appeals Council's holding that Plaintiff had not been overpaid.

Mr. Crimmins agreed that the amount currently owing to Plaintiff for back benefits is $3,831.32.

## II.  ANALYSIS

**A.    Mandamus Jurisdiction**

Defendant argues for dismissal under Fed. R. Civ. P. 12(b)(1), contending that Plaintiff does not meet the prerequisites for 28 U.S.C. § 1361 mandamus jurisdiction. Quoting *Heckler v. Ringer,* 466 U.S. 602 U.S. 602, 616, 104 S.Ct. 2013, 2022 (1984), Defendant maintains that mandamus jurisdiction is inappropriate because it does not owe Plaintiff  "a clear nondiscretionary duty." *Defendant's Brief* at 2.

Section 1361 states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  The initial question is whether mandamus jurisdiction is unavailable by virtue of  42 U.S.C. §§ 405(g) and 405(h), which preclude judicial review of a Social Security claim  until after the final decision of the Commissioner. In  *Bowen v. City of New York,* 476 U.S. 467, 482-83, 106 S.Ct. 2022, 2031-32, 90 L.Ed.2d 462 (1986), the Supreme Court found that the "'finality' requirement consists of two elements.  First, a claim for benefits must be presented to the Secretary. This element is jurisdictional, and absent such a claim there can be no review. Second, the decision must be final in that the claimant has exhausted the administrative remedies prescribed by the Secretary. This element is not jurisdictional and can be waived by the Secretary, and in certain circumstances, the court." *Willis v. Sullivan,*  931 F.2d 390, 396 -397 (6th Cir. 1991); *quoting Bowen*, 476 U.S. at 482-483; *Matthews v. Eldridge,* 424 U.S. 319, 328, 96

-8-

S.Ct. 893, 899.

In *Slone v. Secretary of Health and Human Services,* 825 F.2d 1081, 1083 (6th

Cir. 1987), the court held:

> "The existence of jurisdiction under section 1361 is inextricably bound with
> the merits of whether a writ of mandamus should be issued.  Accordingly,
> jurisdiction to entertain a petition for its issuance cannot exist unless the
> plaintiff colorably demonstrates either that he has exhausted all other avenues
> of relief, or that further exhaustion should be excused. . . . .Where the social
> security claimant's mandamus petition is essentially one seeking the payment
> of benefits, the claimant must establish either that he exhausted, or that he
> should be excused from exhausting, the avenue of direct appeal provided by
> 42 U.S.C. § 405(g) . . ."

(internal citations omitted).

The court in *BP Care, Inc. v. Thompson,* 398 F.3d 503, 515 (6th Cir.  2005) noted that

"[b]oth the Supreme Court and this circuit have avoided deciding whether § 405(h) bars

mandamus jurisdiction under 28 U.S.C. § 1361."  However, in *Ganem v. Heckler,* 746 F.2d

844, 845-846, 241 U.S.App.D.C. 111, 112 - 113 (D.C.C. Cir. 1984), the court held that "the

[Social Security] Act does not preclude the exercise of mandamus jurisdiction," finding that

"the actions of the Secretary of Health and Human Services challenged in this case

constitute such a complete abnegation of the Secretary's statutory responsibilities that

issuance of the writ is warranted."

In *White v. Mathews*, 559 F.2d 852, 856 (2nd Cir. 1977), the Second Circuit also held

that  mandamus jurisdiction existed not withstanding §§205(g) and 205(h), where the issue

was not the claimant's underlying entitlement to benefits, but the agency's procedural

obligations:

-9-

"This action, on the other hand, does not affect the merits of the underlying statutory issue whether claimants in White's class are entitled to benefits that will ultimately be subjected to the administrative process.  Here, the district court was asked merely to require the agency to conduct its proceedings with reasonable speed.  As will be seen below, the agency has a clear obligation under the statute to do so."

So too in this case, Plaintiff's entitlement to benefits is not in issue; rather, the question involves the Defendant's clear obligation, given the ALJ's and Appeals Council's decisions, to reinstate and pay back benefits.

I find that mandamus jurisdiction is not precluded as a matter of law in this Circuit, and that under the facts of this case, Plaintiff has established the prerequisites of mandamus jurisdiction, including a showing that the Defendant owes him a clear, nondiscretionary duty.

Plaintiff, who became a quadriplegic at age 16, has demonstrated that he exhausted all other avenues of relief in seeking payment of benefits dating back to August, 2000. Even if one does not consider that Plaintiff was forced to wait the better part of three years after the cessation of his benefits before the April 10, 2003 hearing,[8] subsequent to ALJ Jachnycky's finding, the Commission repeatedly failed Plaintiff.  The ALJ found that the SSA had not overpaid Plaintiff and ordered payments of benefits from August, 2000.  Even

_____

[8]In *White v. Mathews, supra*, 559 F.2d at 858, the court noted that even a delay of "the better part of a year" in scheduling a hearing would "detract seriously from the effectiveness of the [Social Security Disability] program."  The district court in *White* found that delay averaging 211.8 days was unreasonable, adding, "Such delay denies due process rights to aggrieved applicants and conflicts with the statutory purposes and provisions of the Social Security and Administrative Procedure Acts.  These acts require that the Agency act with reasonable dispatch."  *Id.*

though the ALJ ordered that benefits should be *immediately* reinstated, the SSA failed to pay Plaintiff, prompting the Appeals Council to comment that "[q]uite clearly, the claimant should have received payments until a decision of his appeal was made (emphasis added). It is error for the Social Security Administration to do otherwise."  The Appeals Council's June 4, 2004 decision further provided that such payments should be expedited.

The SSA continued to mishandle Plaintiff's claim even after he filed suit in this Court on November 30, 2004.  Despite the Appeals Council's strongly worded order of June, 2004 which found that expedited payments were appropriate, SSA declined to resume payments until February, 2005. The SSA bungled Plaintiff's claim further by deducting "'back payments' still owing."   In the meantime, Plaintiff received a notice on January 19, 2005 which again stated incorrectly that he had been overpaid by $9,016.27.

Mr. Crimmins' insistence, following the Appeals Council's decision, that Plaintiff provide irrelevant trust disbursement documentation dating back to 1999, despite the ALJ's factual finding, *based on the trustee's sworn testimony*, that all disbursements were made only for "special needs," and not for any purpose which would constitute income to the Plaintiff, is further evidence of the Defendant's intransigence.

Given the "complete abnegation of the Secretary's statutory responsibilities" to make timely payments to Plaintiff, *Ganem v. Heckler, supra*, this Court has subject matter jurisdiction under 28 U.S.C. §1361.[9]

_____

[9]42 U.S.C. §405(q) *Expedited benefit payments* states in pertinent part: "the Commissioner of Social Security shall, if the Commissioner finds that benefits are due,

For similar reasons, I reject Defendant's argument that its payments so far to Plaintiff render this action moot. As of today, Plaintiff has not been reimbursed in full. This Court notes that even U.S. Representative Candice Miller's intervention in February, 2003 did not motivate the SSA to provide Plaintiff with timely relief. Field Office Manager Dennis Crimmins' August, 2004 letter (which he denies writing) stating that he had placed Plaintiff's case in a "denied status" based on his "failure to cooperate," after unjustifiably withholding Plaintiff's benefits for four years leads this court to believe that this represents the "rare case" where an agent of the Commissioner has shown verifiably dilatory behavior. *See Wright v. Califano* 587 F.2d 345, 352 (7th Cir. 1978). Based on its treatment of this case up until now, this Court has no confidence that unmonitored, the SSA will process Plaintiff's claim in a timely and competent manner.

I find the facts of this case deeply troubling. Unfortunately, Mr. Crimmins' testimony did nothing to allay my concerns with the way Mr. Pritchett's case was

---

certify such benefits for payment, and payment shall be made within 15 days immediately following the date on which the written request is deemed to have been filed." Citing 405(q), *White v. Mathews,* 559 F.2d 852, 856, 860 (2nd Cir. 1977) found (1) that mandamus review was not precluded under the Social Security Act, (2) a narrow interpretation of 405(q) did not prevent the federal court's exercise of its remedial power when it finds the Secretary has violated the statute, and (3) the district court acted permissibly in requiring the administration to process claims with reasonable speed. The court in *White,* calling the SSA's pace "glacial," found that the plaintiff's case was entitled to mandamus review as a result of the approximately two year gap between the time the SSA found that the Plaintiff was no longer disabled and the award of back payments based on a subsequent Appeals Council finding. As noted above, in the present case, Plaintiff did not receive any benefits for four and a half years, and as of this date - *five years after the cessation of benefits* - has still not received all of his back payments.

-12-

mishandled.  While Mr. Crimmins attempts to shift blame for the post-appeal delays onto the Plaintiff's and his attorney's "failure" to provide irrelevant documentation, the record, as set forth above, suggests otherwise.  His facile and incorrect parsing of the ALJ's opinion and Appeals Council's orders–which he apparently did not even read until just before yesterday's hearing–is nothing more than an excuse-oriented, *post hoc* rationalization for what is really an inexcusable mishandling of this case and a denial of benefits to a disabled individual for a period of five years.  Furthermore, Mr. Crimmins' claim that his requests for information and closing of the file in 2004 were based on scrupulous application of relevant and mandatory Social Security regulations rings hollow in light of the Defendant's cavalier failure to comply with other mandatory regulations which would have benefitted the Plaintiff, including 20 C.F.R. §416.1336(b).  The question may be fairly asked: Who is guilty of a "failure to cooperate," Mr. Pritchett or the Defendant?

In *White v. Mathews, supra*, 559 F.2d at 858, the court commented as follows regarding the underlying purpose of the Social Security disability program:

> "The disability insurance program is designed to alleviate the immediate and often severe hardships that result from a wage-earner's disability.  In that context, delays of the better part of a year in merely affording an evidentiary hearing detract seriously from the effectiveness of the program."

The five year history of inexcusable delays and missteps in this case, unmitigated by any expression of regret, contrition or apology, suggests that the Defendant has been unfaithful to both the letter and the spirit of the law, and reinforces my view that absent a clear directive from this Court, there can be no assurance that Mr. Pritchett will timely

receive what is owed to him.

**B.    Attorneys' Fees**

In his Complaint, Plaintiff has also requested attorney fees under the Equal Access
to Justice Act (EAJA).

EAJA is one of some 131 fee shifting statutes enacted by Congress. *See Coulter v.
State of Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986).    Specifically, 28 U.S.C. §
2412(d)(1)(A) provides, in pertinent part:

> "Except as otherwise specifically provided by statute, a court shall award to
> a prevailing party other than the United States fees and other
> expenses...incurred by that party in any civil action (other than cases sounding
> in tort), including proceedings for judicial review of agency action, brought
> by or against the United States...unless the court finds the position of the
> United States was substantially justified or that special circumstances make
> an award unjust."

Defendant argues against granting Plaintiff's request for attorneys' fees, maintaining

first that Plaintiff's petition for fees under 42 U.S.C. § 406 should be presented to the

Commissioner rather than this Court and second, that Plaintiff cannot collect fees pursuant

to EAJA because he is not the "prevailing party." *Defendant's Brief* at 4.

The Defendant correctly notes that a request for attorney fees for any work done at

the administrative level would be addressed to the Commissioner, not this Court, under

§406(a).  *See Horenstein v. Secretary of Health and Human Services,* 35 F.3d 261, 262 (6th

Cir. 1994) ("each tribunal may award fees only for the work done before it" ).[10]

---

[10]Plaintiff's counsel represents that he has made an application for fees under
§406(a), but that the Commissioner has not ruled on that request.  To reiterate what

In opposing an award of fees under EAJA, Defendant does not claim that its position was "substantially justified or that special circumstances make an award unjust," [11]but quoting *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 605, 121 S.Ct. 1835, 1840 (2001), maintains that Plaintiff does not qualify as the "prevailing party" merely by effecting some voluntary change in Defendant's behavior since the lawsuit was filed.

The *Buckhannon* Court, rejecting the so-called "catalyst theory," concluded that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." The Court acknowledged that "[b]oth judgments on the merits and court-ordered consent decrees create a material alteration of the parties' legal relationship and thus permit an award. *Id.,* 532 U.S. at 598, 121 S.Ct. at 1837 .

However, the writ of mandamus that I recommend be granted, in which this Court would enter an order to compel retroactive payment of the sum total of Plaintiff's back

_____

I said at the hearing on June 21st, it would be astonishing under these facts if counsel were to be denied reasonable fees for his years of effort on Plaintiff's behalf at the administrative level.

[11]Although Defendant relies on the "prevailing party," rather than the "substantially justified" prong of EAJA, I do find that the position taken by the Defendant in this lawsuit was not substantially justified, for the reasons set forth in this Report and Recommendation.

payments in a timely fashion, would unequivocally make Plaintiff the prevailing party sufficient to satisfy the requirements of EAJA.[12]

Therefore, Plaintiff's counsel is entitled to submit a request for attorneys' fees along with appropriate documentation pursuant to the requirements of EAJA.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Dismissal be DENIED, and that Plaintiff's request for a writ of mandamus be GRANTED, compelling Defendant pursuant to 28 U.S.C. § 1361 to make full payment of all retroactive social security benefits to Plaintiff consistent with the Decision of the Appeals Council no later than August 31, 2005.[13]  I further recommend that Plaintiff's counsel be permitted to submit a request for reasonable attorney fees under EAJA.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

_____

[12]It is theoretically possible that the Defendant might pay all past due benefits before the Court has ruled on any objections to this Report and Recommendation or entered final judgment, in which case the Defendant might likely renew the claim of mootness.  Even if that were to happen, however, Plaintiff would be considered a "prevailing party" under *Buckhannon* by virtue of a favorable Report and Recommendation, which constitutes the requisite "judicial *imprimatur*."  Under 28 U.S.C. §636(b)(1), the burden now falls to the Defendant to file specific objections to this Report and Recommendation, and failure to do so would constitute waiver of any further right of appeal.  Under the *Buckhannon* analysis, this may be considered a "corresponding alteration in the legal relationship of the parties" which would support the award of attorney fees.

[13]The date of August 31, 2005 was suggested by Plaintiff's counsel at the hearing.  I find that to be a reasonable outside date for the payment of back benefits.

-16-

72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen_____
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  June 22, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys

and/or parties of record by electronic means or U.S. Mail on June 22, 2005.

<u>s/Gina Wilson</u>
Judicial Assistant