UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DACEY J. PRITCHETT (formerly known
as Dacey J. LaVigne),

    Plaintiff,

v.                                                                          Case No. 04-74650

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY                  District Judge Avern Cohn
                                                                         Magistrate Judge Whalen

    Defendant.

_____/

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S PETITION FOR ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

### I. Introduction

This is a Social Security case. Plaintiff Dacey Pritchett (Pritchett)[1] requested a writ of mandamus and attorney fees from Defendant Commissioner of Social Security (Commissioner) relating to retroactive Supplemental Security Income (SSI) payments due Plaintiff. Only the request for attorneys fees remains following the Commissioner's payment to Pritchett's of his retroactive SSI benefits.

Before the Court is Plaintiff's Petition for attorneys fees. For the reasons that follow, the Petition is GRANTED.

---

[1] Pritchett is formerly known as Dacey LaVigne.

## II. Background[2]

Pritchett suffered injuries in a 1997 swimming accident which rendered him a quadriplegic. Pritchett applied for SSI and began receiving benefits in February, 1998. In 2000, the Social Security Administration (SSA) terminated Pritchett's monthly benefits because a trust had been established for Pritchett which the SSA said disqualified him from receiving SSI. In August, 2000, the SSA informed Pritchett of its intention to suspend his benefits and that he had been overpaid $9,016.27.

Pritchett timely filed an appeal of the SSA's decision and made numerous attempts to schedule an administrative hearing to consider his case. All SSI payments ceased while his appeal was pending. The SSA did not grant a hearing to Pritchett until a member of Congress intervened. A hearing was held on April 23, 2003, two and one-half years after Pritchett's benefits were suspended, before an Administrative Law Judge (ALJ). The ALJ found that the overpayment determination and suspension of benefits had been made in error due to an erroneous assumption about the trust established for Pritchett. The Appeals Council affirmed the ALJ's decision in June, 2004, and also found that the SSI benefit payments should have continued while the appeals process was ongoing (see 20 C.F.R. § 416.1336(b)). Pritchett presented the Appeals Council decision to the SSA's Port Huron field office later that month.

In August, 2004, a Port Huron field office manager notified Pritchett in a letter that his claim would be placed in "denied status for failure to cooperate" because Pritchett did not provide a portion of the information that the manager had requested. Pritchett complied with the manager's request, but continued to maintain that the

---

[2] The background is gleaned from the parties' papers and the Magistrate Judge's Report and Recommendation (Report and Recommendation).

document requests were completely irrelevant to the Appeals Council order to resume benefit payments. The SSA continued to withhold Pritchett's benefits.

On November 30, 2004, Pritchett filed a complaint with this Court seeking mandamus relief against the Commissioner for retroactive and continuing SSI benefits. On January 19, 2005, Pritchett received notice from the SSA that he owed the agency $9,016.27. The Commissioner filed a motion to dismiss the complaint for lack of jurisdiction on February 1, 2005. Although benefit payments to Pritchett resumed in February, 2005, including the first installment of retroactive payments, the check amount included a deduction for "overpayment." Pritchett eventually began receiving regular benefit payments, though he received no additional payment for past "underpayments" until July, 2005. The payment of past benefits had to be spread out over many months under SSA regulations due to the large amount owed. Though the SSA informed Pritchett in a February 14, 2005, letter that the final retroactive payment to Pritchett would be sent in July, from February through July, 2005, Pritchett remained unsure as to whether the payment of past benefits would proceed due to the problems previously encountered, including the January 19, 2005, notice that Pritchett owed the SSA, and the deduction for "overpayment" on the February, 2005, check.

On June 22, 2005, after a hearing on Pritchett's complaint for mandamus relief, a magistrate judge issued a Report and Recommendation that the Court issue a writ of mandamus ordering the SSA to make full payment of all retroactive SSI benefits by August 31, 2005, that Pritchett's counsel be allowed to apply for reasonable attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. §§ 2412(d)(1)(A), (B), and that Pritchett is the prevailing party in this dispute for purposes of the EAJA. The Commissioner filed an objection to the Report and Recommendation on July 5, 2005,

and Pritchett responded to the objection on July 14, 2005.  Before the Court's scheduled hearing to consider the Report and Recommendation and whether to issue the writ of mandamus, the Commissioner notified the Court that the final retroactive benefits payment to Pritchett had been made on July 5, 2005.  Pritchett filed a petition for attorney fees (Petition) for the work done before the Court on August 4, 2005.  Pritchett filed a revised petition for attorney fees (Revised Petition) to amend the amount request on September 6, 2005.

### III. Discussion
### A. Legal Standard

Attorney fees may be granted in social security cases under the EAJA.  28 U.S.C. §§ 2412(d)(1)(A), (B).  A party must meet the following requirements under the EAJA for the court to award attorney fees and expenses: (1) the petitioning party must be a "prevailing party;" (2) the party must be "eligible;" (3) the government's position at both the administrative and judicial level must be "not substantially justified;" (4) there must be no special circumstances that would make the award unjust; and, (5) the party must apply for fees within thirty days after the final judgment.  Id.  See U.S. v. Hallmark Const. Co., 200 F.3d 1076, 1078-79 (7th Cir. 2000).

### B. Analysis

The Commissioner makes two arguments against awarding attorney fees to Pritchett.  First, the Commissioner argues that Pritchett is not a "prevailing party" under the EAJA and applicable case law.[3]  To be deemed a "prevailing party," the

---

[3]The Commissioner appears to concede that Pritchett meets the other four parts of the EAJA test, including that the Government's position was "not substantially

Commissioner argues that a plaintiff must show that his complaint has created "a material alteration of the legal relationship of the parties."  Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 604-05 (2001) (rejecting the "catalyst" theory for determining a "prevailing party").  Under Buckhannon, a court judgment or decree, not a response to a mere filing of a complaint, establishes the "prevailing party" status necessary for an award of attorney fees under the EAJA.  More generally, the Buckhannon Court required a "judicial *imprimatur*," not a "defendant's voluntary change in conduct."  Buckhannon, 532 U.S. at 605.  The Commissioner asserts that the Report and Recommendation cannot establish Pritchett as the "prevailing party" because the Magistrate Judge's opinion is only advisory and subject to *de novo* review.

What constitutes a "judicial *imprimatur*" under the EAJA is unsettled law.  "Prevailing party" status is not limited to those granted a court judgment or decree.  Rather, any "judicially sanctioned change in the legal relationship of the parties" is sufficient.  Buckhannon, 532 U.S. at 605.  For example, "prevailing party" status was rejected for a plaintiff where a court denied the defendant's request to dismiss the case and a magistrate judge recommended action adversely adjudicating a defendant's motion to dismiss.  Pitchford v. Oakwood Mobile Homes, Inc., 212 F.Supp.2d 613, 617 (W.D.Va. 2002) (plaintiff was victorious on procedural matters and eventually settled with the defendant).  Success on procedural matters which require inquiry into the merits of the case also may not establish "prevailing party" status under the EAJA.  Smyth v. Rivero, 282 F. 3d 268, 276 (4th Cir. 2002) (issuing a preliminary injunction

---

justified."

involving an inquiry into the merits of a claim does not make someone a "prevailing party"). Settling parties have been granted "prevailing party" status under some circumstances. Am. Disability Ass'n, Inc. v. Chmielarz, 289 F.3d 1315, 1319-20 (11th Cir. 2002) ("Even absent the entry of a formal consent decree, if the district court either incorporates the terms of a settlement into its final order of dismissal *or* expressly retains jurisdiction to enforce a settlement, it may thereafter enforce the terms of the parties' agreement," thus meeting the Buckhannon test); Manriquez v. Manuel Diaz Farms, Inc., No. 00-1511-CIV, 2002 WL 1050331 (S.D.Fla. May 23, 2002) (judicial approval of a settlement agreement where the court retained jurisdiction over the case to ensure compliance with the agreement was sufficient to create a judicial order establishing "prevailing party" status for application of attorney fees); Jose Luis R. v. Joliet Township High Sch. Dist. 204, No. 01-CIV-4798, 2001 WL 1000734 (N.D.Ill. Aug. 29, 2001) (consent decree established because hearing officer read the parties' settlement agreement into the record). But see, Union of Needletrades, Industrial and Textile Employees v. INS, 336 F.3d 200 (2nd Cir. 2003) (party is not "prevailing party" after reaching settlement); Sanford v. Sylvania City School Bd., No. 03-CIV-7572, 2005 WL 1847289 (N.D.Ohio August 5, 2005).

  These cases are not controlling authority and can be distinguished from the present case. Unlike in Pitchford, the Report and Recommendation here rendered an opinion on the merits of the case rather than solely rejecting a motion to dismiss. Unlike in Smyth, where the Report and Recommendation was a mere inquiry into the merits of a claim for procedural purposes, the Report and Recommendation is directly adverse to the Commissioner's position on the merits of the case. Finally, the Commissioner's payment to Pritchett was not a settlement in the traditional sense as in the settlement

cases cited above.  Pritchett and the Commissioner did not settle the case through some mutually agreeable resolution, rather, the Commissioner paid Pritchett all that he was owed, possibly in an attempt to avoid a grant of attorney fees, after four years of refusing to pay him.

Though this is unchartered territory, Pritchett is a "prevailing party" under the EAJA and Buckhannon.  The complaint was filed in November, 2004.  Rather than provoke payment of the claim, the complaint provoked the Commissioner to file a motion to dismiss the complaint for lack of jurisdiction.  While the SSA issued a payment of retroactive benefits to Pritchett in February, the Commissioner created some doubt as to whether Pritchett would continue to receive these payments with their January 19, 2005, notice that Pritchett owed the SSA $9,016.27, and the notation on the February payment reflecting a deduction for "overpayment" to Pritchett.  A formal hearing on the complaint occurred in June, 2005, resulting in a Report and Recommendation documenting the SSA's mishandling of Pritchett's case, advising that a writ of mandamus should be issued against the SSA, and suggesting that attorney fees were appropriate.  The Report and Recommendation, issued before the SSA paid all past due benefits, concluded that Pritchett was a "prevailing party" under Buckhannon even if the SSA paid all past due benefits because the "favorable" Report and Recommendation "constitutes the requisite 'judicial *imprimatur.*'"  Report and Recommendation at 16.  The facts demonstrate that the magistrate judge was correct.

The complaint did not prompt the SSA to act.  Only the Report and Recommendation provided the certainty that Pritchett would receive the retroactive benefits owed.  Clearly the reasoning of the Report and Recommendation made it a certainty it would be adopted by the Court.  The SSA appears to have acted in response

to the Report and Recommendation before this Court could adopt it in an attempt to avoid paying attorney fees. While the Report and Recommendation is not binding on the Court, it is judicial authority which motivated the Commissioner to make the final payment to Pritchett. A contrary result would prevent attorney fees in many cases just because they had been referred to a magistrate judge. This would elevate form over substance. Over one year after the Appeals Council affirmed the ALJ's decision, the SSA was still contesting measures to ensure that Pritchett, whose benefits had been unjustifiably suspended for more than four years, would finally receive the benefit he was owed. The Report and Recommendation prompted the Commissioner's payment.

Second, the Commissioner contests that the Court has jurisdiction to consider this Petition because a writ of mandamus can only be issued where a defendant owes a clear nondiscretionary duty to the plaintiff. Because the Commissioner owes no such duty, with Pritchett receiving payment before the Court considered whether to issue the writ of mandamus, the Commissioner argues that the Court lacks jurisdiction to consider ordering a writ of mandamus and attorney fees under the EAJA.

The Commissioner made a similar argument before the Magistrate Judge in an attempt to dismiss the complaint, but the Report and Recommendation found that Pritchett "has established the prerequisites of mandamus jurisdiction." Report and Recommendation at 10. "[D]istrict courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, jurisdiction is limited by 42 U.S.C. §§ 405(g) and 405(h), which preclude judicial review of Social Security claims until after (1) a claim is presented to the Commissioner, and (2) the claimant has exhausted the administrative remedies. See Slone v. Sec. of

Health & Human Servs., 825 F.2d 1081 (6th Cir. 1987). These requirements do not bar mandamus jurisdiction over Social Security claims. See, e.g., Ganem v. Heckler, 746 F.2d 844 (D.C. Cir. 1984).

 Pritchett filed a timely appeal of the SSA's decision to terminate his benefits. Pritchett succeeded before both the ALJ and the Appeals Council, thus exhausting his administrative remedies. Therefore, jurisdiction to consider the writ of mandamus was proper when the case was filed. The payment of benefits made the mandamus request moot, suggesting that no nondiscretionary duty to reinstate benefits or make retroactive payments existed. However, offering Pritchett the relief requested in the complaint does not invalidate otherwise proper jurisdiction under the facts of this case. How could Pritchett trust that the Commissioner would actually pay the retroactive benefits? A January 19, 2005, notice from the SSA to Pritchett stating that Pritchett still owed the SSA $9,016.27. The first installment of retroactive benefits paid to Pritchett in February, 2005, included a deduction for "overpayment." Pritchett's only assurance of eventual payment was a letter from the SSA to Pritchett stating that the final installment would be paid in July, 2005. If Pritchett had withdrawn his complaint upon receiving the letter in February, 2005, he would have been forced to re-file a complaint for mandamus relief should the SSA have chosen to pursue the alleged overpayment instead of pay the benefits. The SSA's unjustifiable and continuous refusal to pay benefits to Pritchett during more than four years of litigation suggests that, under the circumstances, the Court needed to retained jurisdiction to ensure a final outcome.

 The Magistrate Judge issued the Report and Recommendation before the SSA made the final installment payment. The Report and Recommendation's content, and

the threat that it would be adopted by the court, ensured that the final payment would be made rather than delayed.  To allow the SSA to promise a final payment in February and make a final payment in July to avoid the issuance of a writ of mandamus and an award of attorney fees would contravene the purpose of the EAJA and ignore the substance of the case.  Thus, under these unique factual circumstances, jurisdiction is proper to consider the petition for attorney fees.

Finally, the parties agree that $10,500 is a reasonable amount for fees and costs.[4]  Therefore, for the reasons cited above, the Court determines that jurisdiction over this case is proper, that Pritchett has met the requirements entitling him to attorney fees under the EAJA, and that the Commissioner must pay Pritchett $10,500 in attorney fees.


SO ORDERED.

                                                   s/ Avern Cohn
                                                   AVERN COHN
Dated: September 30, 2005        UNITED STATES DISTRICT JUDGE
       Detroit, Michigan

---

[4] Pritchett filed a Revised Petition for attorney fees on September 6, 2005.  The Revised Petition corrected errors as to the amount of fees accrued in handling the case.  The initial Petition requested $3,360, and the Revised Petition requested $10,925 for fees and costs.  Rather than contest the amount for fees and costs, the parties agreed that $10,500 was a reasonable amount for the work performed.